T.C. Memo. 1996-420


UNITED STATES TAX COURT


DEAN W. SCHULZE AND LYNN M. SCHULZE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16346-95.                    Filed September 17, 1996.


<u>Garven W. Videen</u>, for petitioners.

<u>Katherine H. Ankeny</u>, for respondent.


MEMORANDUM OPINION


DINAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

_____

    [1]    Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the taxable year in
issue.  All Rule references are to the Tax Court Rules of
Practice and Procedure.

Respondent determined a deficiency in petitioners' 1992 Federal income tax in the amount of $3,655.

A concession having been made by petitioners,[2] the issues remaining for decision are: (1) Whether $7,141 of the $15,846 (rounded) received by Dean W. Schulze (petitioner) as a graduate associate at the University of Arizona (University) is excludable from gross income; and (2) whether petitioner may deduct $1,016 paid as tuition to the University in 1992.

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioners resided in Tucson, Arizona, on the date the petition was filed in this case.

In the fall of 1985, petitioner enrolled in the graduate program at the University to obtain a Master of Science in Physics (Masters Program). On August 11, 1986, while in the Masters Program, petitioner became a research assistant in the Physics Department. He testified at trial that his duties as a research assistant were to engage in original research that would be suitable for publication in a reference journal, which are the University's and the Physics Department's requirements for a Ph.D.

We would note that in 1986 petitioner was not in a doctoral program; he was not a candidate for a Ph.D. He was in the

_____

[2] Petitioners concede that, under their theory of the case, $8,705 of the $15,846 received by petitioner, Dean W. Schulze, from the University of Arizona in 1992, is not excludable from income.

Masters Program.  Petitioner did not complete the requirements for a Master of Science degree until December 19, 1987.  He then passed the examination given by the University that qualified him for advancement to the Doctoral Program as a candidate for a Ph.D.  Petitioner was admitted to the Doctoral Program as a candidate for a Ph.D. in physics in the spring of 1988.[3]

During 1992, petitioner's director for his Ph.D. dissertation was Professor K. C. Hsieh of the Physics Department.

At some point in time, not specified in the record, Professor Lyle Broadfoot of the Lunar and Planetary Laboratory at the University submitted a proposed contract to the National Aeronautics and Space Administration (NASA) to obtain a research grant.  Professor Broadfoot received a grant from NASA which outlined research that was to be performed to assist NASA in accomplishing various space missions.

In 1992, Professor Broadfoot had approximately six Ph.D. candidates working for him pursuant to the NASA grant.  Each of the Ph.D. candidates was assigned a piece of the puzzle that constituted the research required under the NASA grant. Petitioner was one of those who was employed to perform research under the NASA grant.  Professor Broadfoot assigned petitioner his piece of the puzzle to research.  Professor Broadfoot

---

[3]    Petitioner has not obtained a Ph.D. and, in fact, left the Doctoral Program in the summer of 1995 to take full-time employment.

integrated petitioner's research with the research of the other
Ph.D. candidates that he employed and submitted periodic progress
reports to NASA.

On August 3, 1992, petitioner signed a contract to be a
Graduate Associate in Research in the Lunar and Planetary
Laboratory at the University.  The contract read, in part:

> I herewith accept the appointment as * * *
> Graduate Associate in Research in the Lunar & Planetary
> Laboratory, 50% time (year to year) * * * for the
> academic year 1992-93, effective August 16, 1992 * * *
> at an annual salary rate of $10,836.  Your appointment
> is dependent on the availability of funds from a source
> other than state appropriations, and is subject to
> termination if the non-state funds are not available.
>
> Arizona Board of Regents Policies Chapter 6-301
> Conditions of Professional Service is incorporated by
> this reference as the conditions of your employment.

Petitioner's financial need was not considered when he was
selected for employment as a graduate associate.

For the academic year 1991/1992, petitioner signed a
contract similar to the one he signed on August 3, 1992, for
academic year 1992/1993.

Pertinent information taken from page 40 of the University's
Graduate Catalog, 1991-92, 1992-93 is as follows:

> Assistantships and Associateships
>
> Teaching and research assistantships are available in
> many University departments.  Approximately 2,200 of
> these positions exist and many of them are for first-
> year graduate students.  Salaries vary, but students
> may expect to receive an academic year salary in the
> range of $2,763 to $5,319 for services not exceeding
> ten hours a week, or $5,527 to $10,652 for half-time
> assistantships.

       *     *     *     *     *     *     *

Minimum Enrollment

Students employed as graduate assistants and associates are required to register for at least six units of graduate credit per semester as a condition of their appointments.

Petitioner paid tuition of $1,016 during 1992 to participate in the graduate program.

The University issued petitioner a Form W-2 for 1992 reporting wages paid for the year in the amount of $15,845.50. Petitioners included $15,846 in their wage income on their 1992 return and then deducted the same amount on line 22 of the return to arrive at their total income for the year.

Petitioner contends that the $15,846 (rounded) he received from the University in 1992 was a "stipend" excludable from income pursuant to section 117. In particular, petitioner posits the following:

Code Section 117 changed effective August 17, 1986, but Proposed Regulation 1.117-6(f)(3) provides that in the event a person is receiving a stipend prior to August 17, 1986 and continuously thereafter and meets the condition of the prior Code Section 117 wherein his stipend would have been excluded from taxable income, to the extent of the amount that was being earned prior to 1987 the stipend would be excluded from taxable income even though received after 1986. For the last six months of 1986 or from August 11, 1986 to December 31, 1986 or for one semester, Schulze received $3,570.46 or $7,140.92 for two semesters or a year. That Schulze was paid a stipend as a graduate research assistant/associate continuously from August 11, 1986 through December 31, 1992. <u>That his renewal of his contract each year was a mere formality, was automatic and the form was placed in</u>

<u>front of him and he was told to sign it by his professor</u>.  [Emphasis added.]

Therefore, at least $7,141 of his $15,846 stipend for 1992 should be excluded from taxable income according to the Proposed Regulation 1.117-6(f)(3).  In addition, he was also required to enroll at the University of Arizona for six units each semester in order to maintain his position as a graduate research associate at an expense of $508 per semester or $1,016 for the year 1992 which should also reduce his taxable income.

Respondent contends that the $15,846 paid to petitioner by the University in 1992 was not paid as a scholarship or a fellowship but was, rather, compensation for services rendered.

Section 117(a) provides that gross income does not include any amount received as a "qualified scholarship" by an individual who is a candidate for a degree at an educational organization. Under section 117(b)(1), the term "qualified scholarship" means any amount received by an individual as a scholarship or fellowship grant to the extent such amount was used for "qualified tuition and related expenses".  Under section 117(b)(2), the term "qualified tuition and related expenses" means only tuition and fees required for enrollment and other required fees, books, and equipment required for courses of instruction at such educational organization.  Section 117(c) provides that gross income includes any portion of amounts received as a scholarship or fellowship grant representing payment for teaching, research, or other services by the student required as a condition for receiving the qualified scholarship.

Section 123 of the Tax Reform Act of 1986 (the Act), Pub. L. 101-514, 100 Stat. 2085, 2112, amended section 117, relating to the exclusion of the scholarship and fellowship grants from gross income.  Before amendment by the Act, section 117(b)(1) excluded from gross income amounts received representing payments for teaching or research that were in the nature of part-time employment, if such teaching or research was required of all candidates (whether or not recipients of scholarships or fellowship grants) as a condition of receiving a degree.  Thus, the Act repealed the provisions under section 117 that excluded from gross income amounts received by degree candidates under a scholarship or fellowship grant where such amounts actually represented payment for services.  See Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986 (J. Comm. Print 1987).  Also, as a result of the Act, amounts from grants that were used for other expenses, such as room and board, were not includable in the gross income of the recipient.  Sec. 117(b) and (c).

The amendments to section 117, while made generally applicable to taxable years beginning on or after January 1, 1987, were only made applicable to scholarships or fellowships "granted" after August 16, 1986.  H. Conf. Rept. 99-841, at II-17 (1986), 1986-3 C.B. (Vol. 4) 1, 17.

Under section 1.117-6(f)(3), Proposed Income Tax Regs., 53 Fed. Reg. 21693 (June 9, 1988), a notice of award is considered granted prior to August 17, 1986, if the grantor made a firm commitment to provide the recipient with a fixed or readily determinable dollar amount. If a scholarship or fellowship was granted for a period exceeding one academic period (e.g., semester), amounts received in subsequent academic periods will be treated as granted before August 17, 1986, only if all of the following conditions are met: (1) The amount awarded for the first academic period is described in the original notice of award as a fixed cash amount or readily determinable amount; (2) the original notice of award contains a firm commitment by the grantor to provide the scholarship or fellowship grant for more than one academic period; and (3) the recipient is not required to reapply to the grantor in order to receive the scholarship or fellowship in future academic periods. Sec. 1.117-6(f)(3), Proposed Income Tax Regs.

We note at the outset that proposed regulations "carry no more weight than a position advanced [on brief] by respondent." Estate of Wallace v. Commissioner, 95 T.C. 525, 547 (1990), affd. 965 F.2d 1038 (11th Cir. 1992); Miller v. Commissioner, 70 T.C. 448, 460 (1978) (quoting F.W. Woolworth Co. v. Commissioner, 54 T.C. 1233, 1265-1266 (1970)). However, we may use such proposed

regulations as guidelines or because petitioner relies on the proposed regulations, we will discuss them briefly.

We will address ourselves to requirements three and two of the proposed regulations, in that order, as these are the issues disputed most vigorously. Under the third requirement, the recipient must not be required to reapply to the grantor in order to receive the scholarship or fellowship in future academic periods. Petitioner testified that an appointment must be reapplied for each year, although petitioner contends that such an appointment was automatic.

Under the second requirement, the original notice of award must contain a firm commitment by the grantor to provide the scholarship or fellowship grant for more than one academic period. There is no evidence of any such firm commitment by the University in the original notice of award herein.

There is no documentary evidence in this record of the alleged original notice of award or appointment by which petitioner first became a research assistant in 1986.

Petitioner has not submitted into evidence any of the documents appointing him as a research assistant in the Physics Laboratory or as a research associate in the Lunar and Planetary Laboratory, other than the Acceptance of Appointment document that he signed on August 3, 1992. The document signed August 3, 1992, clearly reflects that petitioner was appointed as a

research associate for 1 year, the academic year 1992-1993, effective August 16, 1992.  Petitioner argues that his appointments as a research assistant or as a research associate were renewed automatically.  If such were the case, it was incumbent upon petitioner to establish that fact, other than by his own self-serving testimony.  Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); see Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947).  We would also note that, although petitioner refers to the total payments in issue as a "stipend", the University refers to the payments as "salary" or "supplemental compensation".  In no instance in the record does the University refer to the payments in issue as a "scholarship" or a "fellowship".

The words "scholarship" and "fellowship" are not defined in the Code.  However, the regulations define a scholarship as "an amount paid or allowed to, or for the benefit of, a student, whether an undergraduate or a graduate, to aid such individual in pursuing his studies."  Sec. 1.117-3(a), Income Tax Regs. Similarly, a fellowship is defined as "an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research."  Sec. 1.117-3(c), Income Tax Regs. The regulations also provide that scholarship and fellowship grants do not include "any amount * * * if such amount represents either compensation for past, present, or future employment

services or represents payment for services which are subject to the direction or supervision of the grantor."  Nor do they include amounts paid to "an individual to enable him to pursue studies or research primarily for the benefit of the grantor." Sec. 1.117-4(c)(1) and (2), Income Tax Regs.  The Supreme Court has upheld the validity of these regulations, stating that the definitions contained therein comport with "the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no strings' educational grants, with no requirement of any substantial quid pro quo from the recipients." Bingler v. Johnson, 394 U.S. 741, 751 (1969).

There is nothing in this record to persuade us that the payments in issue were anything other than payments for services and we so hold.

The University requires students employed as graduate assistants and associates to register for at least six units of graduate credit per semester as a condition of their appointments.  Petitioner paid $508 tuition per semester, for two semesters, to the University in 1992, to register as a graduate student.  Petitioner seeks to deduct his total $1,016 tuition payment as a "condition of employment as a graduate associate" pursuant to either section 161 or section 212.

The Arizona Board of Regents Policies provides at page 25:

B.  Graduate research assistants and associates are full-time graduate students, selected for excellence in

scholarship and promise as researchers, who do part-time research as a portion of their training under the direct supervision of regular faculty members.

Although a condition precedent to being appointed as a research assistant or associate is that one be a graduate student, the tuition paid is obviously for the purpose of registering as a student in the graduate program. Tuition is, by definition, the price of or payment for instruction. Webster's Third New International Dictionary, 2461 (1971).

Section 162 allows as a deduction all the ordinary and necessary expenses, including education expenses, paid or incurred during the taxable year in carrying on any trade or business. See sec. 1.162-5, Income Tax Regs. Whether a taxpayer is carrying on a trade or business is a question of fact.

To be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity, and the taxpayer's primary purpose for engaging in the activity must be for income or profit. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

Petitioner matriculated in the graduate school of the University, first in the fall of 1985, as a candidate for a Master of Science in physics and then, in the spring of 1988, as a candidate for a Ph.D. in physics. It appears from the record that petitioner was a full-time student from the fall of 1985 through the summer of 1995, when he left the University.

Although he received part-time employment at the University as a research assistant or associate, the work did not interfere with his education; in fact, his research activities contributed to his learning process as a graduate student.

In 1992, therefore, we hold that petitioner was not actively engaged in a trade or business.  His tuition expenses were nondeductible personal education expenses.  Sec. 262; see Lenihan v. Commissioner, T.C. Memo. 1977-379.

Petitioner also contends that he is entitled to deduct his tuition payments as amounts expended for the production of income pursuant to section 212.  For the reasons stated, supra, we reject petitioner's argument and hold that the tuition payments were nondeductible personal education expenses.

We have considered all arguments made by petitioner and, to the extent not discussed above, find them to be without merit.

To reflect the foregoing,

Decision will be entered

for respondent.